WIGGINTON, Judge.
Security Title, plaintiff in this multi-count lawsuit, appeals from the trial court’s order of summary judgment which dismissed defendants First American and Julian Boos from the continuing action below. We reverse.
Preparation of this case has resulted in a voluminous record on appeal revealing allegations, facts and concomitant nuances too numerous to fully recount. In brief, First American and T & T Holding Company were two prospective purchasers of Security Title, Inc. in late summer 1979. T & T eventually purchased the corporation for approximately $1.7 million. Nevertheless, according to Security Title’s complaint, within just a few months and at a fraction of that cost, First American in effect acquired the assets of Security Title’s principal income producer, the Tallahassee Title Company. In this action Security Title asserts that First American and its agent, Boos, committed tortious acts to achieve this coup.
In its complaint, Security Title alleged that Tallahassee Title manager Michael Conway and other trusted employees, with assistance from First American and Boos, formed a competing title company (“Professional Title Group”) by tortiously pirating away most of Tallahassee Title’s valued employees and valuable customers, and by surreptitiously photocopying Tallahassee Title records. It is undisputed that First American provided financial backing and exercised some control in the newly-formed Professional Title Group. However, the trial judge, who denied summary judgment for Conway, granted summary judgment for First American and Boos upon a finding *605 that the evidence did not show they participated in the allegedly tortious acts. The judge expressed concern that “[b]y simply characterizing an agreement to enter into a business competing with the plaintiff as a ‘conspiracy,’ plaintiff seeks to convert perfectly lawful acts into unlawful conduct."
While we agree with the trial court that in the spirit of free enterprise (see Section 542.16, Florida Statutes (1980 Supp.)) a new business should be encouraged to germinate and blossom, a jury could reasonably infer that tortious acts had been committed. For example, deposition testimony indicates that First American required Conway and the new company to acquire certain “title plant” records that might be expected to cost $100,000, yet the final start-up budget that was approved by First American did not allocate funds for the required records. From this and from other evidence in the record a jury might reasonably infer that First American had agreed with Conway that the records could be compiled more cheaply by taking them from Conway’s employer, Tallahassee Title.
Further, the record contains evidence that Boos, acting for First American, conspired with Conway to breach his fiduciary duty to Tallahassee Title by soliciting Tallahassee Title employees. See Fish v. Adams, 401 So.2d 843 (Fla. 5th DCA 1981); Insurance Field Services, Inc., et a 1. v. White & White Inspection and Audit Service, Inc., 384 So.2d 303 (Fla. 5th DCA 1980); Kilgore Ace Hardware, Inc. v. Newsome, et al., 352 So.2d 918 (Fla. 2d DCA 1977). We cannot subscribe to appellees’ theory that because First American owed no duty to Tallahassee Title, it could not be liable for a civil conspiracy that had as its goal the unlawful breach of fiduciary duty by Conway toward Tallahassee Title. See Kilgore Ace Hardware, 352 So.2d at 920.
In short, genuine issues of material fact exist regarding the knowledge and participation of First American and Boos in the allegedly tortious activities in this case, Accordingly, the trial court’s order of summary judgment is REVERSED.
BOOTH and JOANOS, JJ., concur.